IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Allen, *et al*,                                              Case No. 3:04CV7053

    Plaintiffs

v.                                                                                    ORDER

Independent Concrete Pipe Co., *et al*,

    Defendants

This is a products liability case. Plaintiff David Allen brought this action against Independent Concrete Pipe Co. (Independent), his former employer; Con-E-Co, Inc. (Con-E-Co), the manufacturer of Independent's concrete mixer; and Erie-Strayer (Erie), the manufacturer of the control panels that governed the concrete mixer's operation. Remaining in this case are Allen's claims that Erie is responsible for injuries he suffered in an accident at Independent. Jurisdiction exists under 28 U.S.C. § 1332.

Pending is Erie's motion for summary judgment for all claims Allen asserts against it. For the following reasons that motion will be granted.

**Background**

Independent is a manufacturer of concrete products. From 1971 until June 4, 2002, Allen worked for Independent in a variety of capacities, lastly as a maintenance supervisor.

In 1977, Independent constructed a new plant to produce concrete pipe. It purchased from Con-E-Co a mixer to mix cement, water, and aggregate to create concrete. The mixer occupies several stories in Independent's plant. At its bottom, the mixer has a discharge chute from which wet

cement emerges onto a conveyor belt. The conveyor belt transports the wet cement to pipe molds. A system of air compressors, rather than the electric motors that power the internal workings of the mixer itself, powers the opening and closing of the discharge chute.

To control the mixer's operations, Independent purchased control panels from Erie. One control panel is adjacent to the mixer and governs its electric motors. From this panel, an Independent employee can separately lock out operation of those motors. A second panel is in the control room, not far from the mixer itself. This panel includes buttons to open and close the discharge chute and a key that de-energizes the compressors powering the opening and closing of the discharge chute. De-energizing the compressors causes the discharge chute to close. Turning this key also cuts power to the rest of the plant. Independent instructed its employees never to touch that key.

The parties disagree about other aspects of the original design of these control panels. Specifically, at the time of the accident, the button closing the discharge chute was connected to a single-solenoid switch. Consequently, a momentary press of the button would close the discharge chute. Erie contends that it originally installed the panel with a double-solenoid design, so that continuous pressure on the button was necessary to close the discharge chute. It argues that someone else subsequently modified the control panel.

On June 4, 2002, as part of his job as maintenance supervisor, plaintiff Allen began to clean the mixer. He first locked out the electric motors at the panel adjacent to the machine. Because Independent had instructed him never to touch the key and because the discharge chute had to be open to clean it properly, Allen did not lock out the compressors that opened and closed the discharge chute.

Allen then went to the third floor and entered the mixer from an access door. He cleaned the interior of the mixer with his tools. Because it would have meant putting his head into the discharge chute, Allen did not clean the discharge chute from inside the machine. Instead, he exited the mixer from the access door and proceeded to the second floor where he could access the discharge chute from outside the machine and clean it without having to place any part of his body in the discharge chute.

Allen left his cleaning tools in the discharge chute, where he would retrieve them by reaching into the chute from the second floor.

As Allen reached into the discharge chute for his tools, another Independent employee bumped the discharge chute close button on the panel in the control room. The discharge chute closed, with Allen's arm inside it, severely injuring him. He now claims Erie's design and manufacture of the control panels and Erie's failure to warn Independent and its employees about how the panels worked, caused his injuries.

## Discussion

Revised Code § 2307.71, *et seq.*, controls products liability claims in Ohio. *See Indiana Ins. Co. v. General Electric*, 326 F. Supp. 2d 844, 855 (N.D. Ohio 2004). The Code establishes the elements of the prima facie cases for design and manufacturing defects and failure to warn under both negligence and strict liability theories. O.R.C.§2307.71, *et seq*.

The statute also provides that assumption of risk is a complete bar to any recovery. O.R.C.§2307.711(B). Thus, where a plaintiff knew of the danger a product posed and nonetheless voluntarily proceeded in his course of action, he may not recover. *Bowling v. Heil Co.*, 31 Ohio St. 3d 277, 282 (1987).[1]

---

[1] Because there are no genuine issues of material fact whether assumption of risk bars Allen's claims,

In this case, Allen admitted he was told not to put any part of his body through the opening in the discharge chute. He testified that while he locked out the electronic motors, he knew there was still power to the discharge chute. Allen admitted that he knew the discharge chute was dangerous and could close when he reached his arm into it.

In addition, nothing about how Independent required or expected Allen to perform his job overcomes Erie's assumption of risk defense. While assumption of risk is not available were an employee must encounter the risks while performing normal job duties, *Carrel v. Allied Products Corp.*, 78 Ohio St. 3d 284, 290 (1997); *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St. 3d 145, 147 (1991), in this case Allen admitted he did not need to reach into the discharge chute to clean the mixer. The only reason he had to reach into the machine was because he chose to leave his tools there, rather than carry them out with him through the access door.

While Allen's injury is unfortunate, he knew the discharge chute still had power, he should not have put his arm into the discharge chute, the chute could close unexpectedly, and his job did not require him to put his arm there. Thus, there remain no genuine issues of material fact whether Allen assumed the risks inherent in placing his arm in the discharge chute. Because assumption of risk is a complete bar to recovery for all of plaintiff's claims, summary judgment is appropriate.

## Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT defendant's motion for summary judgment be, and the same hereby is, granted.

So ordered.

s/James G. Carr

---

for the purposes of this order I will assume he can make out his prima facie case.

        James G. Carr
        Chief Judge